## UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE:  WILTON ARMETALE, INC. a/k/a WAPITA, INC.,  Debtor | ) ) ) ) ) | Chapter 7  Case No. 16-16779-REF |
| WILTON ARMETALE, INC. a/k/a WAPITA, INC.,  Plaintiff  vs.  IVAN L. JEFFERY,  Defendant | ) ) ) ) ) ) ) ) ) | Adversary No. 18-00212-REF |

### MEMORANDUM OF LAW OF PLAINTIFF WILTON ARMETALE, INC. A/K/A WAPITA, INC. IN OPPOSITION TO DEFENDANT DEBTOR IVAN L. JEFFERY'S MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.B.P. 7012(B)(6)

Plaintiff Wilton Armetale, Inc. a/k/a Wapita, Inc. ("Wilton") submits this Opposition Memorandum in response to the improvident motion [Doc.s 4, 5 & 9] of defendant debtor Ivan L. Jeffery ("Jeffery") for F.R.B.P. 7012(b)(6) dismissal of plaintiff's Complaint in this adversary proceeding.

Together with this Memorandum, Wilton has filed a Request for Judicial Notice and exhibits thereto, including related orders from April 2017 through November 2017 of U.S. District Judge Andre Birotte, Jr. and U.S. Magistrate Judge Marilyn Heffley requiring production of relevant documents that defendant Jeffery and Leisawitz Heller had been required to deliver but instead withheld and concealed.[1]

---

[1] *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-427 (3rd Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings … Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion" [citations omitted]); *Buck v. The Hampton Township School District*, 452 F.3d 256, 260 (3rd Cir. 2006) (in reviewing a motion to dismiss, court may consider "documents attached to or submitted with the complaint" and matters of public record, orders, items appearing in the record of the case,

Jeffery's dismissal motion should be denied as (among other things):

(i) Jeffery, while sole director, officer and fiduciary of insolvent corporation Wilton, secretly demanded and received a bribe for himself in violation of criminal law to approve a below-market and commercially unreasonable sale of Wilton's assets and thereby caused at least approximately $550,000 of damages to Wilton); although Jeffery so knew Wilton was a Jeffery creditor, Jeffery never placed Wilton or Wilton's Chapter 7 Trustee on Jeffery's creditor matrix, nor gave or caused actual notice to be given to Wilton's Chapter 7 Trustee or to Wilton of the bar date for claims against Jeffery; likewise, Jeffery never gave or caused actual notice to be given to Wilton's Chapter 7 Trustee or to Wilton of the deadline for creditors to file a complaint objecting to debtor Jeffery's discharge and to determine dischargeability of a debt; and thus Jeffery is not entitled to assert a bar date or dischargeability deadline against his victim Wilton;

(ii) Wilton's Complaint pleads post-petition misrepresentations, concealment and other misconduct of Jeffery and his counsel (Leisawitz Heller) in which they falsely denied in this Court, and withheld and concealed evidence of, Jeffery's misconduct; their misrepresentations and concealment of evidence continued through, and so were not discovered until, after Jeffery's bar date and dischargeability deadline had passed; and Jeffery's efforts to invoke a bar date and dischargeability deadline are thus precluded and estopped by (among other things) fraudulent concealment and equitable tolling doctrines;

---

and other items subject to judicial notice); *In re Chocolate Confectionary Antitrust Litigation,* 749 F.Supp. 2d 224, 231 (M.D. Pa. 2010) (on a Rule 12(b)(6) motion, court reviews facts contained in the complaint and "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" [citations omitted]; to like effect, *In re Wilmington Trust Securities Litigation,* 29 F.Supp.3d 432, 443 (D. Del. 2014); *Southmark Prime Plus, L.P. v. Falzone,* 776 F. Supp. 888, 892 (D. Del. 1991) (Court can take judicial notice of proceedings in other courts).

(iii) this Court "ordered" the Wilton Chapter 7 Trustee's abandonment to Wilton of the very claims Wilton now asserts against Jeffery and also "ordered" the Jeffery Trustee's stipulation and agreement to not "make, any objection or impediment to or otherwise interfere with assertion or pursuit by … [Wilton] of any of the Abandoned Claims" now asserted by Wilton against Jeffery; and

(iv) factual allegations in Jeffery's moving papers should be stricken and disregarded as they are not supported by any citation or admissible evidence, and in any event, are not properly asserted in a motion to dismiss.

## STATEMENT OF MATERIAL FACTS

1. Defendant Jeffery's Statements of Purported Facts Lack Citation to and Are Not Derived from the Complaint or Complaint Exhibits; Are Improper in the Context of a Rule 12(b)(6) Dismissal Motion; and So Should Be Stricken and Disregarded.

Jeffery's papers are couched as a dismissal motion under F.R.B.P. Rule 7012(b)(6), and so must comply with Rule 12(b)(6) of the Federal Rules of Civil Procedure. Instead, Jeffery's papers improperly include lengthy statements of purported facts without citation to and without any support in the Complaint or any Complaint exhibit; in any event, those new Jeffery allegations are not permitted in the context of a Rule 12(b)(6) motion; and those Jeffery allegations are highly improper and should be stricken and disregarded.

Jeffery's apparent need to include such improper allegations in his papers is itself a "red flag" that Jeffery's motion is without merit.

2. Plaintiff Wilton Properly Summarizes Below the Material Facts and Includes Specific Citation to the Complaint, Complaint Exhibits, and Court Orders.

From September 2010 to May 10, 2016, Ivan Jeffery was sole shareholder, sole director, officer, and fiduciary of Pennsylvania corporation Wilton, and also guarantor of Wilton's indebtedness to Artesanias for wares Wilton purchased from Artesanias [Complaint ¶¶6. 7, 12, 19 & 20, Exhibits 6 & 21].

During that period from September 2010 to May 10, 2016, the Leisawitz Heller law firm was counsel to both Wilton and Jeffery; thereafter Leisawitz Heller ceased to be counsel for Wilton but has continued as counsel for Jeffery [Complaint ¶18].

By September 29, 2015 and at all times thereafter, Wilton was insolvent [Complaint ¶¶11 & 16, Exhibits 4, 5, 25A & 25B].

On March 7, 2016, Wilton's fiduciary Jeffery agreed to and did consummate sale of Wilton's non-real estate assets to Gordon Brothers, a liquidator hand-picked by North Mill Capital LLC ("North Mill") for a below-market and commercially unreasonable price of only $725,000, and payment of all $725,000 to North Mill, leaving Wilton without funds or resources to maintain or protect its Pennsylvania real estate (which had an appraised "as is" fair market value of $895,000) [Complaint ¶20, Ex.s 23 & 27(G-7)].

In order to obtain fiduciary Jeffery's agreement to that below-market and commercially unreasonable sale and payment of all proceeds to North Mill, Jeffery demanded and obtained an unlawful bribe from North Mill,[2] consisting of North Mill's

---

[2] Pennsylvania's commercial bribery statue, 18 Pa.C.S.A. §4108(a) states:
 "An employee, agent or fiduciary commits a misdemeanor of the second degree when, without the consent of his employer or principal, he solicits, accepts, or agrees to accept any benefit from another person upon agreement or understanding that such benefit will influence his conduct in relation to the affairs of his employer or principal."
Such commercial bribery also violates 18 U.S.C. §1952 which renders criminal any travel in or use of mail or facility of interstate commerce with intent to promote, carry on or facilitate the promotion or carrying on, of any act of bribery in violation of state law.

entry into a concurrent March 7, 2016 agreement with Jeffery whereby North Mill would pay Jeffery 20% of net proceeds received by North Mill from foreclosure on and sale of Wilton's real estate [Complaint ¶¶20, 66-70, Exhibits 21, 23 & 27(G-7)].

During April 2016, Artesanias Hacienda Real S.A. de C.V. ("Artesanias") obtained from the U.S. District Court and then recorded judgments against Wilton for "Account Stated" in the amount of $920,645.38 and against Wilton's guarantor Jeffery for $923,457.87 [*Artesanias Hacienda Real S.A. de C.V. v. Wilton Armetale, Inc. and Ivan Jeffery*, 5:15-cv-06350-EGS (the "Predecessor Action")] [Complaint ¶¶18-19, Ex.1].

During May 2016 (pursuant to that April 2016 District Court judgment against Jeffery), Jeffery transferred his shares of Wilton to an Artesanias affiliate named Mega Living S.de R.L. ("Mega Living"). Thereupon Jeffery was removed as director and officer of Wilton; Leisawitz Heller ceased to be Wilton's counsel (but continued as counsel for Jeffery); new management was appointed for Wilton; Wilton's new management immediately delivered letters to Jeffery/Leisawitz Heller demanding turnover of all Wilton documents; a subpoena was then served on Leisawitz Heller for Wilton's documents; and a letter of Wilton's new management was delivered to Leisawitz Heller waiving attorney-client privilege as to all documents sought. [Complaint ¶¶21, 89-91, Exhibits 30 & 31]

Although Wilton's new management so removed Jeffery as director and officer and so waived attorney-client privilege as to documents sought, Jeffery and Leisawitz Heller did not comply with the turnover demands and the subpoena. Instead, Leisawitz Heller improperly withheld and concealed documents sought on erroneous grounds that Jeffery retained attorney-client privilege as to Wilton's documents [Complaint ¶¶91-92,

Exhibit 32; Wilton's Request to Take Judicial Notice, Exhibit 4 (June 2, 2017 Memorandum Opinion of U.S. Magistrate Judge Marilyn Heffley)].

On July 15, 2016, Jeffery filed a Chapter 7 petition, whereupon Lynn E. Feldman was appointed Chapter 7 Trustee of his bankruptcy estate [Complaint ¶¶22-23].

Despite fiduciary Jeffery's receipt of a bribe, breach of fiduciary duties and other misconduct against Wilton (in connection with, among other things, his consent to and approval of the below-market and commercially unreasonable sale of Wilton's non-real estate assets to North Mill's hand-picked liquidator Gordon Brothers for only $725,000 and Gordon Brothers' payment of all $725,000 directly to North Mill, leaving Wilton without resources to maintain or protect its valuable real estate), Jeffery did not list Wilton as a creditor on his creditor matrix [Request to Take Judicial Notice, Ex. 1].

On September 26, 2016, Wilton filed its Chapter 7 petition, whereupon David A. Eisenberg was appointed Chapter 7 Trustee of Wilton's bankruptcy estate [Complaint ¶¶24-25].

On January 19, 2017, Artesanias filed its adversary Complaint to Deny Jeffery Discharge [Adv. Proc. 17-28] in light of and citing (among other things) a series of false statements in Jeffery's bankruptcy petition, filings, and statement of financial affairs.

Meanwhile, at Jeffery's 341 hearing on August 22, 2016 and at Jeffery's hearing March 24, 2017 proceedings in this bankruptcy court (and thus through the bar date and adversary complaint deadline), Jeffery (through his counsel Leisawitz Heller) misrepresented that the only offer for Wilton's non-real estate assets was the $725,000 Gordon Brothers offer.  Jeffery and Leisawitz Heller continued to withhold and conceal

all documents and information that would have revealed a much higher offer from Vagabond House. [Complaint ¶¶92-96]

Thereafter, a series of motions to compel discovery were filed and orders obtained, requiring Leisawitz Heller, Strategic Resources, Inc. (which assisted Wilton in soliciting potential buyers for Wilton's non-real estate assets), and Vagabond House to produce documents previously withheld and concealed [Request to Take Judicial Notice Ex.s 3 through 5]. Those documents would reveal (contrary to misrepresentations made by Jeffery's counsel Leisawitz Heller) that fiduciary Jeffery and Leisawitz Heller did receive from Vagabond House a February 15, 2016 offer to purchase certain (but not all) of Wilton's non-real estate assets for an estimated purchase price of $1,232,000, and thus for approximately $550,000 more than the price at which those assets were sold on March 7, 2016 to Gordon Brothers in the transaction in which Jeffery demanded and received a bribe [Complaint ¶¶47-51, Exhibits 11A-11D].[3]

On June 6, 2018, this Court signed and entered a Stipulation and Consent Order among the Wilton Trustee, the Jeffery Trustee, Artesanias, and Wilton pursuant to which the Wilton bankruptcy estate abandoned to Wilton claims against Jeffery (including claims "for breach of fiduciary duty, fraud /fraudulent concealment, and related causes of action") [Complaint ¶32, Exhibit 3 (Consent Order §1)]. In that Consent Order [at §2], The Wilton Trustee and the Jeffery Trustee each agreed that:

---

[3] On May 30, 2018, Jeffery's counsel Leisawitz Heller belatedly produced an email chain (bates-stamped J57-61) in which Jeffery acknowledged receipt of Vagabond House's February 15, 2016 offer to purchase certain of Wilton's non-real estate assets for an estimated purchase price of $1,232,000 (rather than the $750,000 for which they were sold on March 7, 2016 in the Jeffery-approved sale and his receipt of a concurrent bribe from North Mill of 20% of North Mill's net proceeds from foreclosure on and resale of Wilton's real estate) [16-15037, Doc. 204-13].

"neither of them will file, submit or otherwise make, any objection or impediment to or otherwise interfere with assertion or pursuit by ... [Wilton] of any of the Abandoned Claims, ...".

During August 2018, a deposition (attended by Jeffery's counsel Leisawitz Heller) was held of Wilton's former President Ed Leibensperger, who threat authenticated many of those documents Jeffery and Leisawitz Heller had previously withheld and concealed [Request to Take Judicial Notice, Exhibit 6].

During September 2018, plaintiff Wilton filed this adversary action asserting claims against Jeffery for his breach of fiduciary duties, fraud/fraudulent concealment, and related causes of action [Complaint, Adv. Proc. 18-212]. Wilton cited in and attached to its adversary Complaint certain documents authenticated by Ed Leibensperger at his August 2018 deposition [Complaint Ex.s 4-8, 10B, 11A, 12, 14, 16-19].

The only remaining creditors of the Jeffery Chapter 7 bankruptcy estate (other than creditors whose claims have been satisfied or withdrawn) are Jeffery's judgment creditor Artesanias (which consents to Wilton's adversary action), the Jeffery Trustee (who has agreed not to object to or otherwise oppose this action), and plaintiff Wilton (which pursues this adversary action as set forth in its Complaint against Wilton).

## DISCUSSION.

1.  Jeffery and His Counsel Misrepresented in His Bankruptcy Proceeding and Withheld and Concealed Evidence Sought as to Their Misconduct.

As alleged in the Complaint and reflected in the Complaint's exhibits, plaintiff Wilton asserts claims against Jeffery arising in substantial part from and including Jeffery's and his counsel's post-petition misrepresentations on the record in this Court and their post-petition fraudulent withholding and concealment of key evidence as to their misconduct. For instance, the Complaint so alleges that, after Jeffery's July 15,

2016 filing of his Chapter 7 petition, Jeffery directly and through his agents engaged in

(among other things) the following misconduct:

> "¶91. In response to the May 2016 document requests by Wilton's new management and Artesanias, Leisawitz Heller (then counsel for Jeffery) delivered a June 24, 2016 letter indicating Leisawitz Heller would not produce Wilton documents on grounds of Jeffery assertion of purported attorney-client privilege as to Wilton documents [Complaint Ex. 32], although Leisawitz Heller had received written waiver by Wilton's new management of Wilton's attorney-client privilege as to those documents sought.[4]

> ¶92. Thereafter, Jeffery and his counsel Leisawitz Heller continued to withhold responsive documents with respect to Wilton for more than a year (until Artesanias filed motions for and obtained orders to compel delivery of those documents), thereby concealing for more than a year (among other things) each and every responsive document evidencing, referencing, commenting upon or otherwise relating to the February 15, 2016 letter of intent/offer of Vagabond House to purchase Wilton's non-real estate assets for an estimated purchase price of $1,232,000.

> ¶93. At Jeffery's initial 341 proceedings on August 22, 2016, Jeffery's counsel Leisawitz Heller, in the presence of Jeffery, misrepresented on the record (despite the February 15, 2016 letter of intent/offer of Vagabond House and related emails to purchase Wilton's non-real estate assets for an estimated purchase price of $1,232,000) that at the time of the sale of Wilton's non-real estate assets to Gordon Brothers, there were "no other suitors" for Wilton.   Eden Bucher of Leisawitz Heller so misrepresented on the record at that 341 proceeding as follows [Tr. 47:1-4]:

> "MS. BUCHER: ... Then North Mills finds Gordon Brothers and says, sell the assets to Gordon Brothers.  We had no other suitors at that point for the company [Wilton] and that's when the sale went through.

> MR. KOTTLER [counsel for the Jeffery Chapter 7 Trustee]:  And that's for all of the non-real property assets, correct?

---

[4] *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 351-352 (1985), corporation's new management had power to waive attorney-client privilege over objection of prior management; *Maleski v. Corp. Life Ins. Co.*, 641 A.2d 1 (Pa. Commw. 1994) under Pennsylvania law new management of insolvent corporation has right to waive corporate attorney-client privilege over objection of former management; *Gilliland v. Geramita*, 71 Fed. R. Evid. Serv. 285, 2006 WL 2642525 at *3 (W.D. Pa. 2006). See also Judge Heffley's June 2, 2017 decision in related case, Adv. No. 17-197 entitled *Artesanias Hacienda Real S.A. de C.v. v. North Mill Capital LLC and Leisawitz Heller.*

MS. BUCHER: Correct."

¶94. During March 24, 2017 proceedings in the Bankruptcy Court with respect to Jeffery's bankruptcy case, Jeffery's counsel Leisawitz Heller again misrepresented on the record that there had been no offer for, and that no one in the industry had wanted, Wilton's non-real estate assets other than Gordon Brothers.   Jeffery's counsel so misrepresented on the record at those Jeffery bankruptcy proceedings as follows [March 24, 2018 Tr., Eden Bucher of Leisawitz Heller at 18:6-15]:

"There was no buyer coming out of the woodwork to buy this property for more than North Mill Capital was – and when I say property I mean business assets. ... There were huge marketing packages that went out to all of the other people in this industry that nobody wanted."

¶95. Jeffery through his counsel thus, on the one hand, misrepresented during his 341 proceedings during August 2016 and in the bankruptcy court on March 24, 2017 that there was no buyer for and nobody in the industry wanted Wilton's non-real estate assets other than Gordon Brothers, whilst, on the other hand, withholding and concealing from Wilton's new management and creditor Artesanias all documents and information evidencing or reflecting Vagabond House's letter of intent/offer to purchase Wilton's non-real estate assets for an estimated purchase price of $1,232,000 (substantially more than the $725,000 offered and paid by Gordon Brothers).

¶96. Jeffery and Leisawitz Heller so knowingly and intentionally withheld and concealed documents from Wilton's new management and from judgment creditor Artesanias, as Jeffery and Leisawitz Heller sought to withhold and conceal evidence of their breach of fiduciary duties and other misconduct in failing to deal properly with the Vagabond House offer to purchase Wilton's non-real estate assets for an estimated purchase price of $1,232,000; that the Jeffery-approved below-market and commercially unreasonable sale of Wilton's non-real estate assets for only $725,000 was substantially less than offered by Vagabond House; and that fiduciary Jeffery insisted on and accepted a bribe from North Mill of 20% of net proceeds of North Mill foreclosure on and sale of Wilton's real estate in consideration for Jeffery's approval of and consent to sale of Wilton's non-real estate assets for only $725,000 and payment of all that $725,000 directly to North Mill, leaving Wilton without funds or resources to maintain or protect its valuable Mt. Joy real estate."

The Complaint further pleads Jeffery's post-petition fraudulent concealment and

other misconduct against Wilton including (among other things), the following [see

Complaint ¶¶103(viii) & (ix), 113(viii) & (ix), 122 (viii) & (ix)]:

"withholding, refusing to provide, and concealing evidence from Wilton, Wilton's new management, and Wilton's creditor Artesanias emails and other documents evidencing, relating to and concerning (among other things) (a) the $1,232,000 offer of Vagabond House to purchase Wilton's non-real estate assets; and (b) the below-market and commercially unreasonable private sale of Wilton's non-real estate assets to Gordon Brothers for only $725,000 and payment of all $725,000 directly to North Mill, in consideration for which Jeffery received a bribe of 20% of net proceeds of foreclosure on and resale of Wilton's Mt. Joy real estate; and

permitting and not correcting material misrepresentations by Jeffery's counsel on the record at Jeffery's 341 proceedings on August 22, 2016 and at Jeffery's March 24, 2017 bankruptcy proceedings that there was no buyer for and nobody in the industry wanted Wilton's non-real estate assets other than Gordon Brothers, whilst, on the other hand, knowingly and intentionally withholding and concealing from Wilton's new management and creditor Artesanias all documents and information known and available to Jeffery evidencing or reflecting Vagabond House's letter of intent/offer to purchase Wilton's non-real estate assets for an estimated purchase price of $1,232,000 (substantially more than the $725,000 offered and paid by Gordon Brothers)."

In light of the post-petition misconduct of Jeffery and his agents, Wilton has asserted in its Complaint its claims for debtor Jeffery's post-petition breach of fiduciary duties, fraud, and fraudulent concealment, not subject to a pre-petition stay.[5]

> 2. The Fraudulent Concealment and Equitable Tolling Doctrines Each Apply to and Preclude Jeffery's Assertion of a Bar Date or Adversary Claim Deadline as to Matters He and His Counsel Misrepresented to the Court and as to Evidence Sought Which They Knowingly and Intentionally Withheld and Concealed.

As so alleged in the Complaint, Wilton's fiduciary Jeffery and his counsel actively misrepresented to this Court that there had been no offers for Wilton's non-real estate assets other than the $725,000 Gordon Brother offer, thereby actively misrepresenting receipt of, and withholding and concealing all documents which would have revealed, Vagabond House's $1,232,000 offer for certain of those Wilton non-real

---

[5] *See In re McJonathan*, 533 B.R. 440, 446-447 (Bankr. M.D. Pa.) [post-petition misconduct is not subject to the §362 stay, and so may be asserted in an adversary action; no evidence beyond mere allegations was offered by debtor to show creditor was engaged in pursuing only pre-petition claim; and thus a dispute of material fact required denial of debtor's §362(a) summary judgment motion].

estate assets (Vagabond House's $1,232,000 offer being approximately $550,000 higher than the North Mill-arranged $725,000 offer Wilton's fiduciary Jeffery accepted for Wilton and as to which Jeffery demanded and received from North Mill the bribe of 20% of net proceeds of North Mill foreclosure on and resale of Wilton's real estate).

In short, fiduciary Jeffery and his counsel so misrepresented to this Court through the bar date and through the adversary complaint deadline that there was no competing offer for Wilton's assets (despite the knowledge of both Jeffery and his counsel that Vagabond House had made a $1,232,000 offer, approximately $550,000 larger than the $725,000 North Mill-arranged offer Jeffery accepted); they further withheld and concealed through the bar date and adversary complaint deadline all evidence sought as to, and which would have revealed, that much higher Vagabond House offer; and the fraudulent concealment and equitable tolling doctrines thus apply and so estop and preclude Jeffery from asserting the limitation period of any bar date or adversary complaint deadline.

A. The Fraudulent Concealment Doctrine.

As described in *Bohus v. Beloff*, 950 F.2d 919, 926 (3rd Cir. 1991), "fraudulent concealment may be either intentional or unintentional," and "need only consist of some affirmative and independent act of concealment that would prevent the plaintiff from discovering the injury".   Moreover, *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3rd Cir. 1985), states that "if through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry, the defendant is

estopped from invoking the bar of limitation of action". *See also Bynum v. Trustees of University of Pennsylvania*, 115 F.Supp. 3d 577, 586 (E.D. Pa. 2015).[6]

B. The Equitable Tolling Doctrine.

Similarly, in *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S. Ct. 582, 585 (1946), the Supreme Court held the equitable tolling doctrine is read into "every federal statute of limitations". Later, the Supreme Court repeated in *Holland v. Florida*, 560 U.S. 631, 646, 130 S. Ct. 2549, 2560 (2010), "it is hornbook law that limitations periods are customarily subject to equitable tolling", citing *Young v. U.S.*, 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed. 2d 79 (2002) (quoting *Irwin* v. *Dept. of Veterans Affairs*, 498 U.S. 89, 95, 111 S. Ct. 453 (1990). Equitable tolling is appropriate when (among other things), "a defendant actively misleads a plaintiff with respect to [the] cause of action," or "the plaintiff has been prevented from asserting [the] claim as a result of other extraordinary circumstances", *Bynum v. Trustees, supra*, at 587 citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3rd Cir. 1994). In *Young, supra* at 50, the Supreme Court observed that equitable tolling applies in particular "to bankruptcy courts, which are courts of equity and apply the rules of equity jurisprudence".

So applying the equitable tolling doctrine, *In re Keystone Surplus Metals, Inc.*, 452 B.R. 554, 558-61 (E.D. Pa. 2011), noted that "a party should not be permitted to profit from its own wrongdoing", and thus held the statute of limitations tolled by debtor's failure to make required disclosures and debtor's misleading misrepresentations on which the Chapter 7 trustee was entitled to rely, citing *In re J & D Sciences, Inc.*, 335

---

[6] *In re O.E.M./Erie, Inc.*, 405 B.R. 779, 784-87 (Bankr. W.D. Pa. 2009), fraudulent concealment would toll the statute of limitations in adversary action against defendant (debtor's president) for fiduciary duty breach, and so his motion to dismiss was denied.

B.R. 791 (M.D. Fl. 2006).[7] *See also In re Opus East, LLC*, 2013 WL 4478914 at \*5-6 (Bank. D. Del. 2013) (equitable tolling applies because debtor did not meet statutory obligation to make required disclosures and because bankruptcy trustee was entitled to rely on information provided by debtor).

In any event, because resolution of a dispute as to equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution without an evidentiary hearing. *Bynum v. Trustees, supra* at 587:

> "Our Court of Appeals has observed that 'because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion.' *In re Community Bank of N. Va.*, 622 F.3d 275, 301-02 (3rd Cir. 2010) (citing decisions from the Courts of Appeals for the Ninth and Seventh Circuits)."[8]

As described in Wilton's Complaint [¶¶93-95], Jeffery (through his counsel Eden Bucher, Esq. of Leisawitz Heller) at his 341 proceedings on August 22, 2015, misrepresented there had been no competing offer (and thus no higher Vagabond House offer) for Wilton's non-real estate assets; subsequently, North Mill's Senior Vice President falsely testified in this court that there had been no competing (and thus no higher Vagabond House) offer; and Jeffery through his counsel (again Eden Bucher of

---

[7] *In re J &D Sciences, Inc., Id* at 797-798, held the time bar for an adversary action was tolled because defendant debtor affirmatively concealed his misconduct from the trustee, and the trustee was entitled to rely on debtor's representations under oath at a creditor's meeting, thereby rendering irrelevant any evaluation of trustee's due diligence. Similarly, *In re Levy*, 185 B.R. 378, 385-86 (S.D. Fla. 1995) held the adversary complaint deadline was equitably tolled by debtor's failure to make required disclosures, as a chapter 7 trustee has "a right to rely" on debtor's statements, and so not time-barred.

[8] *See also In re O.E.M./Erie, Inc., supra* at 786; *In re Everfresh Beverages, Inc.*, 238 B.R. 558, 577 (Bankr. S.D. NY 1999) (whether equitable tolling applies is necessarily a factual issue "often not ripe for consideration on a motion to dismiss").

Leisawitz Heller) further repeated and misrepresented in this court that there had been no competing (and thus no higher Vagabond House) offer.

Moreover, Jeffery and his then counsel Leisawitz Heller did not comply with Wilton's new management instruction to produce documents. Rather, Leisawitz Heller further violated the document Subpoena by withholding and concealing all documentary evidence and information as to Vagabond House's much higher offer. Indeed, Jeffery and Leisawitz Heller did not produce any documents with respect to that higher Vagabond House offer until after ordered to do so by Judge Heffley's June 2, 2017 decision [Complaint ¶¶92-96, Request to Take Judicial Notice, Ex. 4].

Because Jeffery and his counsel so affirmatively misrepresented through the bar date and through the adversary complaint deadline that there was no such competing and higher Vagabond House offer, and likewise withheld and concealed through the bar date and the adversary complaint deadline all evidence and information which would have revealed that competing Vagabond House offer, both the fraudulent concealment and equitable tolling doctrines preclude Jeffery from now asserting any such bar date or adversary complaint deadline.

C. Jeffery's Chapter 7 Trustee Has Consented to and Agreed Not to Object, Impede or Otherwise Interfere with Wilton's Assertion or Pursuit of the Adversary Claims against Jeffery.

On September 6, 2018 this Court "ordered" and entered a Stipulation and Consent Order of the Jeffery Trustee and the Wilton Trustee in which they agreed (i) to the Wilton Trustee's abandonment to Wilton of claims against Jeffery, and (ii) to not "make any objection or impediment to or otherwise interfere with assertion or pursuit by … [debtor Wilton] of any of the Abandoned Claims" [Complaint ¶32, Exhibit 3]. That Stipulation

and Consent Order explicitly defines the "Abandoned Claims" [Claims abandoned by

Wilton Chapter 7 Trustee to debtor Wilton] as follows:

> "1. ... the Abandoned Claims include (without limitation)... Claims against Ivan
> Jeffery for breach of fiduciary duty and fraud/fraudulent concealment and related
> causes of action."

Section 2 of that Court-approved Stipulation and Consent Order then further

states:

> "The Wilton Trustee and the Jeffery Trustee each irrevocably waive, and neither
> of them will file, submit or otherwise make, any objection or impediment to or
> otherwise interfere with assertion or pursuit by Artesanias or the Debtor [Wilton]
> of any of the Abandoned Claims, ..."

In fact, Wilton's pursuit of this adversary action may significantly benefit the

Jeffery bankruptcy estate and the Jeffery Trustee, as:

(a) this adversary action asserts claims for relief (including without limitation

compensatory and punitive damages) which could result in additional recoveries from

Jeffery exceeding recoveries previously sought or that may be otherwise achieved by the

Jeffery Trustee and Artesanias; and

(b) Artesanias and Wilton have agreed in the Court-ordered Stipulation and

Consent Order that net recoveries by Wilton from Jeffery will be applied to reduce

Artesanias' claims against the Jeffery Chapter 7 Estate, and so leave more funds available

for the Jeffery Trustee and her counsel [Complaint, Exhibit 3 (§3 of the June 2018

Stipulation and Consent Order signed and entered by this Court)].

3. <u>Neither Jeffery nor the Jeffery Chapter 7 Trustee Gave Actual Notice to
Wilton's Chapter 7 Trustee or to Wilton of the Bar Date or the January 2017
Adversary Complaint Deadline.</u>

Pursuant to 11 U.S.C. §521(a)(1)(A) and Fed. R. Bankr. P 1007(a)(1), the debtor

is responsible for filing, along with the petition, a list of creditors.

In light of Jeffery's breach of fiduciary duties, misrepresentations, fraud, fraudulent concealment and other misconduct against Wilton, Wilton was a known creditor of Jeffery, and thus Jeffery was required to list Wilton as a creditor. But Jeffery did not list Wilton or the Wilton Chapter 7 Trustee as a creditor on his creditor matrix or otherwise [Request to Take Judicial Notice, Exhibits 1 and 2].

Because Jeffery did not list Wilton as a creditor on his creditor matrix or otherwise, neither Wilton's Chapter 7 Trustee nor Wilton was given actual notice of the bar date,[9] and so the bar date does not apply to and cannot be asserted by Jeffery against Wilton. *See Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3rd Cir. 1995), *cert. den.* 517 U.S. 1137 (1996), observing:

> "Known creditors must be provided with actual written notice of a debtor's bankruptcy filing and bar claims date. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 296, 73 S. Ct. 299, 301, 97 L.Ed. 333 (1953)

Moreover, Artesanias' counsel (attorney Goldin) was never counsel for the Wilton Trustee and so knowledge of Artesanias' counsel cannot be imputed to the Wilton Trustee, to whom actual notice of the bar date was required to be given. *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3rd Cir. 1999) holding imputation of knowledge in a 12(b)(6) motion was erroneous, where "there is nothing in the pleadings or in the published decisions of any court suggesting" a relationship so strong as to justify imputation of knowledge and thus imputation should not be assumed in the 12(b)(6) framework.

Likewise, by reason of Jeffery's continuing post-petition misrepresentations, fraud, fraudulent concealment and other misconduct against the Wilton Estate and

---

[9] Tellingly, Jeffery does not allege or provide any evidence that Wilton's Chapter 7 Trustee or Wilton was given notice of the bar date.

Wilton, Jeffery is barred by equitable tolling and fraudulent concealment doctrines from asserting the bar date or the January 21, 2017 adversary complaint deadline.

Thus the bar date and the adversary complaint deadline do not apply to and cannot be asserted by Jeffery against Wilton, the victim of Jeffery's criminal bribery scheme and other concealed misconduct [see fn. 2 above].

4. The Instant Action Is Brought by and Seeks Relief in the Name of Wilton (not Artesanias) for Compensatory and Punitive Damages and Related Relief.

Jeffery now improperly seeks to conflate Wilton with Artesanias as if they were the same company asserting the same claims in the same amount.    Jeffery's efforts are improper as:

(i) Wilton and Artesanias are not the same company; Artesanias is not even a shareholder of Wilton; and Jeffery asserts no grounds for this Court to treat Wilton and Artesanias as one and the same.

(ii) Wilton's claims against Jeffery are not the same as Artesanias' claims against Jeffery.    Artesanias, having obtained an April 2016 District Court judgment against Jeffery for his breach of his personal guaranty of Wilton obligations, has been pursuing its adversary action [17-28-JKF] to have Jeffery denied discharge.    In contrast, Wilton's instant adversary action against fiduciary Jeffery asserts claims against him for breach of fiduciary duty, constructive fraud, and fraud/fraudulent concealment.

(iii) The relief Wilton seeks is different from the relief Artesanias seeks.    On the one hand, Artesanias, which already has a judgment against Jeffery for $923,457.87 on Jeffery's signed personal guaranty, has been and is now asserting against Jeffery an adversary complaint to deny him discharge [17-28-JKF].    On the other hand, Wilton's instant adversary complaint now asserts against Jeffery claims for compensatory and

punitive damages owed Wilton as a result of Jeffery's breach of fiduciary duties, constructive fraud, and fraud/fraudulent concealment against Wilton.

5. <u>In any Event, Neither Wilton's nor Artesanias' Claims Have Been Satisfied</u>.

To date, Jeffery has not paid a penny to Wilton.

Artesanias has collected only approximately $150,000 against its more than $923,000 judgment and proof of claim against Ivan Jeffery. Moreover, there is no assurance that Artesanias' adversary case to Deny Jeffery Discharge will succeed (Jeffery has filed an answer denying allegations of that Complaint and that adversary proceeding is currently in discovery) or, even if Jeffery is denied discharge, that Artesanias will succeed in fully collecting its judgment and other obligations Jeffery owes Artesanias.

Meanwhile, although Artesanias also has filed an adversary action against North Mill and Leisawitz Heller [17-197-JKF] for their aiding and abetting and conspiracy in Jeffery's bribery transaction and other misconduct, that action has not yet progressed beyond those defendants' motions to dismiss. There is no assurance that action by Artesanias will be successful, or, if successful, as to the amount which may be collected therefrom.

Similarly, although Wilton recently filed its adversary action against Gordon Brothers for fraudulent transfer and aiding and abetting Jeffery's bribery and related breaches of fiduciary duties [18-200], Gordon Brothers then filed an answer denying the claims; there is no assurance Wilton will succeed in that action against Gordon Brothers; and there is no assurance as to the amount (if any) Wilton may collect therefrom.

6. <u>Jeffery Further Misstates and Ignores the Significance of Jeffery's Bribe and Other Misconduct.</u>

Though Jeffery's papers are filed as a "motion to dismiss", Jeffery's Memorandum of Law [Doc. 9 at p. 5 (fn.2)] falsely asserts, without citation or support of any kind, that only Gordon Brothers could complete the sale of Wilton's assets in an acceptable timeline. That Jeffery assertion is highly improper, as not supported by any admissible evidence and in any event belied by Vagabond House emails and Affidavit [Complaint ¶¶47-51, Exhibits 11A-D]. Those Vagabond documents confirm Vagabond House could have completed its due diligence and did have the funds to consummate the purchase even before the March 7, 2016 date at which Wilton's non-real estate assets were purchased by North Mill's hand-picked liquidator Gordon Brothers.

Jeffery Memorandum [Doc. 9 at p.5 (fn. 2)] now admits, on the one hand, "A higher purchase price than that paid by Gordon Brothers would have been in the best interests of Wilton". But, on the other hand, Jeffery ignores that during his negotiations with North Mill, Jeffery through his counsel Leisawitz Heller [Complaint ¶¶63-64]:

> (a) admitted the insufficiency of the $725,000 Gordon Brothers purchase price [so admitting the $725,000 purchase price was "significantly less than what the collection of the AR's (accounts receivable) and sale of inventory would bring"];
>
> (b) demanded and obtained, "in exchange for his consent" as Wilton's director, officer, and fiduciary "to allow the assets to be sold to Gordon Brothers for the price of $725,000", that North Mill pay him a bribe of 20% of North Mill's net proceeds from foreclosure on and resale of Wilton's real estate; and
>
> (c) threatened North Mill that, if North Mill failed to pay him that bribe, then Jeffery (on behalf of Wilton) "will not consent to the Gordon Brothers transaction".

See for instance Complaint ¶64, quoting Complaint Exhibit 19 [the March 2, 2016 email from Charles Phillips of Leisawitz Heller to North Mill]:

> "64. In the words of that March 2, 2016 email from Leisawitz Heller (counsel for insolvent corporation Wilton and fiduciary Jeffery) to North Mill's attorney Jack Seitz and carbon copied to Ivan Jeffery [(Complaint) Ex. 19]:

"The concept that I discussed with North Mill was **that in exchange for the Junior Participant and owner's consent** [the consent of sole shareholder, sole director and officer Jeffery] **to allow the assets to be sold to Gordon Bros. for the price of $725,000 (which amount Mr. Jeffery believes is significantly less than what the collection of the AR's and sale of inventory would bring), there had to be some upside for** the Junior Participant [Jeffery]. ....   the remaining proceeds [from sale of the Wilton real estate] would be paid 80% to NM and 20% to the Junior Participant [Jeffery].
...**If North Mill insists on changing the deal, then the Borrower [Wilton] will not consent to the Gordon Brothers transaction.**" [emphasis added]

7. Recusal of Judge Fehling.

On July 18, 2017 Judge Fehling recused himself from hearing plaintiff judgment creditor Artesanias' pending adversary action against Jeffery [Adv. Proc. 17-28] to deny Jeffery discharge of (among other things) the federal District Court's April 2016 Judgment for $923,457.87 against Jeffery. [That Recusal Order is Exhibit 7 to Wilton's Request to Take Judicial Notice].

Judge Fehling's Recusal Order cited as grounds for his recusal his "long-standing relationship with many of the lawyers" in the Leisawitz Heller law firm (Jeffery's counsel in this action); "the context in this case of Leisawitz being a party in Adv. Proc. 17-197" [entitled *Artesanias Hacienda Real S.A. de C.V. v. North Mill Capital LLC and Leisawitz Heller*]; and his "understanding that many of the facts and issues in Adv. Proc. 17-197 are also critical in the adjudication of Adv. Proc. 17-28, which therefore leads to, at least, administrative consolidation for discovery and trial purposes".

Meanwhile, Leisawitz Heller continues to be (i) counsel for defendant debtor Jeffery in the instant action and in related action Adv. 17-28 [entitled *Artesanias Hacienda Real S.A. de C.V. v. Ivan Jeffery*] currently before Bankruptcy Judge Jean K. FitzSimon and (ii) a defendant in related case, Adv. Proc. 17-197 [*Artesanias Hacienda*

*Real S.A. de C.V. v. North Mill Capital, LLC and Leisawitz Heller*] also currently before

Judge Jean K. FitzSimon.

Each of those actions before Judge FitzSimon [Adv. 17-28 and Adv. Proc. 17-

197] and the instant action share and involve common issues of material fact and law --

including without limitation common issues of fact and law as to (among other things):

(i) fiduciary duties owed to insolvent Pennsylvania corporation Wilton and to

Wilton's creditors by Wilton's sole shareholder, sole director, and officer Jeffery;

(ii) the February 15, 2016 offer of Vagabond House to purchase non-real estate

assets of Wilton for an estimated purchase price of $1,232,000;

(iii) the below-market and commercially unreasonable March 7, 2016 sale of all

Wilton's non-real estate assets to North Mill's hand-picked liquidator Gordon Brothers

for only $725,000 (rather than $1,232,000 offered by Vagabond House);

(iv) payment of all $725,000 by Gordon Brothers directly to North Mill leaving

Wilton without funds or resources to maintain or protect Wilton's valuable Mt. Joy real

estate (which had been appraised as having an "as is" fair market value of $895,000);

(v) negotiation, execution, and effectuation of the concurrent March 7, 2016

agreement by which Jeffery was bribed to approve the below-market and commercially

unreasonable sale of Wilton's assets to Gordon Brothers and the payment of all proceeds

directly to North Mill, leaving Wilton without funds or resources to maintain or protect

its real estate;

(vi) North Mill's ensuing confession of inflated and collusive judgments against

Wilton which Wilton's fiduciary Jeffery and Leisawitz Heller (then counsel for both

Wilton and Wilton's fiduciary Jeffery) encouraged and did not oppose, as Jeffery sought

to obtain the benefit of his bribe, namely 20% of net proceeds of North Mill foreclosure on and resale of Wilton's valuable real estate;

(vii) misrepresentations by Leisawitz Heller, then acting as counsel for Jeffery in Jeffery's bankruptcy proceedings, that there had been no offer for Wilton's non-real estate assets other than the $725,000 Gordon Brothers offer, and their withholding and concealment of all documents or information which would have revealed the $1,232,000 Vagabond House offer for certain of Wilton's non-real estate assets (approximately $550,000 more than the price paid by Gordon Brothers to North Mill in the transaction in which fiduciary Jeffery was bribed as described above); and

(viii) application of the anti-bribery criminal statutes of Pennsylvania [18 Pa.C.S.A. §4108(a)] and federal [18 U.S.C. §1952] to the bribe demanded and received by Jeffery, and related breaches of fiduciary duty, fraud, and fraudulent concealment and other misconduct of Jeffery, which Leisawitz Heller, North Mill, and Gordon Brothers aided and abetted and in which each of them co-conspired.

Moreover, Leisawitz Heller attorneys are key witnesses who will be required to testify against Jeffery in the instant and other actions against Jeffery, including (without limitation) as to their misrepresentations on the record at Jeffery's 341 proceedings on August 22, 2018 [Complaint ¶93 citing Tr. (Eden Bucher) at 47:1-12] and at the March 24, 2017 hearing in this Court [Complaint ¶94 citing Tr. (Eden Bucher) at 18:6-15]. Likewise, Leisawitz Heller attorneys will be required to testify as to their withholding and concealment of documents -- required to be but not, produced prior to the bar date and the adversary complaint deadline in Jeffery's bankruptcy proceedings – which, if timely produced, would have revealed Vagabond House made, and Jeffery and Leisawitz

Heller were aware of, Vagabond House's February 15, 2016 offer to purchase certain of Wilton non-real estate assets for $1,232,000 (approximately $550,000 more than the $725,000 actually paid on March 7, 2016 by Gordon Brothers in the transaction in which Jeffery through Leisawitz Heller demanded and Jeffery received the concurrent North Mill bribe) [see fn. 2 above].

## **CONCLUSION.**

WHEREFORE, plaintiff Wilton respectfully requests that this Honorable Court deny defendant debtor Jeffery's improvident Motion to Dismiss and transfer and re-assign this adversary case to Judge FitzSimon.

Dated: November 12, 2018

Respectfully Submitted

/s/John R.K. Solt
JOHN R. K. SOLT, ESQ.
2045 Westgate Dr., Suite 404B,
Bethlehem, PA 18017
Tel: 610-865-2465  Fax: 610-691-2018
Email: jsolt.soltlaw@rcn.com
*Attorney for Plaintiff Wilton Armetale, Inc. aka WAPITA, Inc.*

/s/Barry L. Goldin
BARRY L. GOLDIN, ESQ.
3744 Barrington Drive, Allentown, PA 18104-1759
Tel: 610-336-6680  Fax: 610-336-6678
Email: barrygoldin@earthlink.net
*Attorney for Plaintiff Wilton Armetale, Inc. aka WAPITA, Inc.*

HAC81030.1OPPMIJDM